IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRUSTEES OF THE NATIONAL               *
ELECTRICAL BENEFIT FUND,
                                       *
        Plaintiff,
                                       *          Civil No. TDC-22-2901
v.
                                       *
D.N.R. ELECTRICAL CONTRACTORS,
INC.,                                  *

        Defendant.
                       *       *       *       *       *       *

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Default Judgment ("Motion") (ECF No. 11) filed by Plaintiff Trustees of the National Electrical Benefit Fund ("NEBF"). Defendant D.N.R. Electrical Contractors, Inc. ("DNR") has not filed a response, and the time for doing so has passed. *See* Loc. R. 105.2(a). On May 8, 2023, in accordance with 28 U.S.C. § 636 and pursuant to Local Rule 301.6, Judge Chuang referred this case to me for a report and recommendation on NEBF's Motion. ECF No. 14. I find that a hearing is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that NEBF's Motion be granted.

I.    **FACTUAL AND PROCEDURAL HISTORY**

In this case, NEBF filed suit against DNR under the Employee Retirement Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1132(e), to recover delinquent pension fund contributions and related relief. ECF No. 1. DNR was personally served with the Complaint and summons, *see* ECF No. 5, but it did not file an answer or responsive pleading. On February 14, 2023, NEBF moved for the Clerk's entry of default (ECF No. 7), and the Clerk entered default

against DNR on March 6, 2023 (ECF No. 8). On May 2, 2023, NEBF filed the Motion, to which DNR has not responded.[1]

## II.    LEGAL ANALYSIS

### A.    Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *Ryan*, 253 F.3d at 780. Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations in the complaint regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151 at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may

---

[1] The Court has subject matter jurisdiction over this case pursuant to Section 502 of ERISA, 29 U.S.C. §§ 1132 and 1451(c). 28 U.S.C. § 1331. Venue is proper under 29 U.S.C. § 1132(e)(2) because NEBF is administered in this district. *See Nat'l Elec. Benefit Fund v. Code Eng'g Servs., Inc.*, No. TDC-16-1685, 2016 WL 6926404, at *2 (D. Md. Nov. 28, 2016).

enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages, however; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

### B.    Liability

ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. ERISA further provides that employers who fail to make timely contributions are liable in a civil action for unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs, and any other relief the Court deems appropriate. 29 U.S.C. § 1132(a), (g).

In the Complaint, NEBF alleges that it is a multiemployer employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2). ECF No. 1 ¶ 4. DNR is an employer that has agreed to participate in the NEBF pursuant to a collective bargaining agreement with a labor union. *Id.* ¶ 6. Specifically, on or about November 28, 1996, a representative of DNR signed a Letter of Assent in which DNR agreed to "comply with, and be bound by, all of the provisions contained"

3

in an "Inside labor agreement between the Electrical Contrs. Assoc., NECA, City of Chicago and Local Union 134, IBEW," as well as "subsequent approved labor agreements."[2] ECF No. 11-5. By signing the Letter of Assent and agreeing to "comply with, and be bound by," the terms of the relevant collective bargaining agreement, DNR agreed to the following provision, which is contained in Section 6.01 of the collective bargaining agreement:

> It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund (NEBF) as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual employers will forward monies to the NEBF's designated local collection agent an amount equal to 3% of the gross monthly labor payroll paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.
>
> The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

ECF No. 11-6 at 29.   This term is consistent with Article 6 of the Restated Employees Benefit Agreement and Trust for the NEBF ("Trust Agreement"), which is referenced in the collective bargaining agreement. ECF No. 11-7 at 2.

Pursuant to the collective bargaining agreement and the Trust Agreement, DNR is required to submit contributions to NEBF on behalf of DNR's covered employees. ECF Nos. 11-6 at 29; 11-7 at 2. In general, under these agreements, DNR is required to pay NEBF an amount equal to 3% of the gross labor payroll for DNR covered employees on a monthly basis. *Id.* Notwithstanding its obligations, DNR failed to make the contributions to NEBF for its covered

---

[2] NECA stands for the National Electrical Contractors Association. ECF No. 1. ¶ 4. IBEW stands for the International Brotherhood of Electrical Workers. *Id.*

employees. ECF No. 1 ¶¶ 8-10. In its Complaint, NEBF alleges that DNR owed $19,528.34 in unpaid delinquent contributions in connection with work performed by its covered employees for the period of January 2019 through September 2022.[3] *Id.* ¶ 10. According to an Affidavit submitted by Brian Killian, the Contribution Compliance Manager of the NEBF, since the Complaint was filed, DNR "has paid to NEBF the principal amount of the Reported Contributions, but has not made any payment towards the Unreported Contributions." ECF No. 13 at 3. DNR still owes NEBF delinquent contributions in the amount of $9,400.68 (the Unreported Contributions). *Id.*

Accepting as true the unchallenged allegations of the Complaint, along with the evidence that NEBF submitted in connection with its Motion to show that DNR was bound by the terms of the collective bargaining agreement and the Trust Agreement, NEBF has established DNR's liability for failure to pay the contributions required by the collective bargaining agreement and the Trust Agreement.

### C.     Damages

Having determined that NEBF has established DNR's liability, it is now appropriate to determine the damages to which NEBF is entitled. The damages NEBF seeks in its Motion are appropriate under Rule 54(c) so long as "the record supports the damages requested." *See Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010). Here, NEBF has provided sufficient evidence to support its claim for damages in the amount of $16,326.40.

---

[3] This amount comprises $10,127.66 in connection with covered work performed between June 2021 and September 2022 ("Reported Contributions") and $9,400.68 in connection with covered work performed between 2019 and 2020 that was not reported to NEBF, but was uncovered in an audit of DNR's payroll records in August 2022 ("Unreported Contributions"). ECF No. 13 at 2-3.

In support of its claim for damages, NEBF relies on Mr. Killian's Affidavit. ECF No. 13. Under the Trust Agreement, which Mr. Killian incorporates into the Affidavit, NEBF may recover delinquent contributions, interest on delinquent contributions at a rate of ten percent per annum, liquidated damages in the amount of twenty percent of the delinquent contributions, audit fees, and attorney's fees and costs incurred in collecting delinquent contributions. *Id.* at 3. As discussed above, these damages are allowed under ERISA. 29 U.S.C. § 1132(g).

Based on the audit that NEBF conducted of DNR's payroll records for 2019 and 2020, NEBF determined that DNR failed to report $9,400.68 in contributions for covered work performed during 2019 and 2020. ECF Nos. 13 at 2-3; 11-8 (partially redacted audit report). DNR has not responded to NEBF's demands for payment of these outstanding contributions. *Id.* I recommend that the Court award $9,400.68 to NEBF for DNR's outstanding delinquent contributions. I also recommend that the Court award $500.00 to NEBF to cover the costs of the audit that uncovered the Unreported Contributions. *See id.*

NEBF also seeks prejudgment interest on the delinquent contributions in the amount of $3,164.39, the calculation of which is set forth at ECF No. 11-9. In addition, NEBF seeks liquidated damages for DNR's delinquent contributions in the amount of $1,880.13, which is twenty percent of the delinquent contributions. ECF No. 13 at 3. NEBF's requests for an award of prejudgment interest and liquidated damages are supported by the evidence that NEBF has submitted. I recommend that the Court award NEBF $3,164.39 for prejudgment interest and $1,880.13 for liquidated damages.

NEBF also seeks an award of attorney's fees and costs, which are available in ERISA cases. 29 U.S.C. §1132(g)(2). When a court enters judgment in favor of the plaintiff in an ERISA action for a plan to recover unpaid contributions, it "shall award the plan . . . reasonable

attorney's fees and costs of the action, to be paid by the defendant." *Id*. In calculating an award of attorney's fees, the court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). The Fourth Circuit has stated that a court's

> discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In addition, Appendix B to this Court's Local Rules ("Rules and Guidelines for Determining Attorneys' Fees in Certain Cases") provides that lawyers admitted to the bar for 20 years or more may reasonably bill $300-475 per hour. Lawyers admitted to the bar for less than five years may reasonably bill $150-225 per hour. These rates serve as guidelines in determining the reasonableness of hourly rates.

Throughout this litigation, NEBF has been represented by Jennifer Hawkins ("Ms. Hawkins") and Peter Tkach ("Mr. Tkach") of the law firm Potts-Dupre, Hawkins & Kramer, Chrtd. ECF No. 11-1 ¶ 4. Ms. Hawkins has been a licensed attorney for more than 27 years and has been responsible for NEBF's ERISA collections proceedings at her law firm since 1996. *Id.* ¶ 5. Ms. Hawkins charged a rate of $392.00 per hour in this case. *Id.* ¶ 5. This rate is within the guidelines set forth in the Local Rules, and I find it to be a reasonable hourly rate. Mr. Tkach charged an hourly rate of $188.00, which is also within the guidelines set forth in the Local Rules, and I find it to be a reasonable hourly rate. *See id.* I further find that the time that Ms. Hawkins and Mr. Tkach spent working on this case, which is detailed in Ms. Hawkins'

Declaration, *id.* ¶ 6, is reasonable. Finally, NEBF incurred a total of $552.00 in costs, which includes the $402.00 fee for filing the complaint and a $150.00 service fee. *Id.* ¶ 9. I recommend that the Court award NEBF attorney's fees in the amount of $829.20 and costs in the amount of $552.00.

In total, I recommend that $16,326.40 in damages be awarded to NEBF against DNR. This amount includes $9,400.68 in delinquent contributions; $3,164.39 in interest; $1,880.13 in liquidated damages; $500.00 for the audit cost; $829.20 in attorney's fees; and $552.00 in filing and service costs. I also recommend that NEBF be awarded any additional fees and costs incurred in connection with the enforcement of the judgment, and post-judgment interest at the rate set forth in 28 U.S.C. § 1961.

## III.   CONCLUSION

In sum, I recommend that the Court:

1.      Grant the Trustees of the National Electrical Benefit Fund's Motion for Default Judgment (ECF No. 11);

2.      Enter judgment in favor of the Trustees of the National Electrical Benefit Fund against D.N.R. Electrical Contractors, Inc. in the amount of $16,326.40, plus post-judgment interest to accrue at the legal rate;

I also direct the Clerk to mail a copy of this Report and Recommendation to D.N.R. Electrical Contractors, Inc.

Objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).

May 22, 2023                                       _____/s/_____

Date                                                Timothy J. Sullivan
                                                     United States Magistrate Judge